**BABY TAM & CO., INC., A Nevada corporation, Plaintiff–Appellant,**

v.

**CITY OF LAS VEGAS, Defendant–Appellee.**

No. 98–15004.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1998.

Decided Sept. 10, 1998.

---

Michael D. Stein, Las Vegas, NV, for plaintiff–appellant.

Philip R. Byrnes, Las Vegas, NV, for defendant–appellee.

Before: REINHARDT, NOONAN and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Baby Tam & Co., Inc. ("Baby Tam") sought, and was denied, a Las Vegas business license to operate an adult bookstore. It sued the City of Las Vegas ("City") under 42 U.S.C. § 1983 seeking a permanent in-

junction enjoining the City from enforcing the licensing ordinance. Baby Tam alleged that the licensing scheme constituted an unconstitutional prior restraint and suppression of speech in violation of the First and Fourteenth Amendments.

The district court denied Baby Tam's application for a preliminary injunction. Baby Tam appeals that denial. We have jurisdiction under 28 U.S.C. § 1292(a)(1). Because the ordinance fails to provide for prompt judicial review of a license denial, as required by *Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion), the ordinance on its face is a prior restraint of speech which violates the First and Fourteenth Amendments. Accordingly, we reverse the district court's denial of Baby Tam's application for a preliminary injunction. Because our resolution of this issue is determinative of the litigation, we remand with instructions to the district court to enter a permanent injunction enjoining enforcement of the ordinance in its present form.

### FACTS

Baby Tam operates its business under the name "Hot Stuff." Among other items, the store sells sexual novelties, adult videos, general videos, T-shirts, and gag gifts. In January of 1997, Baby Tam sought a business license for Hot Stuff from the City of Las Vegas. In Las Vegas, a business must obtain a license before beginning operations. Las Vegas, Nev. Municipal Code ("L.V.M.C.") § 6.02.060 (1996).

Baby Tam proposed to operate its business at 5100 W. Charleston Boulevard in the City of Las Vegas. This location is within the City's C–1 zone. That zone allows the presence of various commercial establishments, but not adult bookstores. L.V.M.C. § 19.74.020(A) (1992). Adult bookstores are permitted in other zones in the City.

Under L.V.M.C. § 19.74.020(A), an "adult bookstore" is defined as an establishment "having at least fifty-one percent of its stock in trade books, film, magazines, and other periodicals which are distinguished or characterized by an emphasis on depicting or describing sexual conduct or specified anatomical areas." [1]

On its application for a business license, Baby Tam stated that 30% of its merchandise would be adult videos. Based on that application, the City issued a 60–day temporary bookstore license which enabled Hot Stuff to begin operations. After the temporary license expired, the City issued another temporary license. In all, Baby Tam received four temporary licenses. Under the temporary license provision of the City's licensing ordinance, a business may receive a maximum of only three temporary licenses. L.V.M.C. § 6.02.070(D).

Baby Tam never received a permanent license.[2] Before the final temporary license expired, the City conducted an audit of the Hot Stuff store's inventory to determine what percentage of it consisted of adult material. According to the results of that audit, the store's adult inventory exceeded the 51% threshold proscribed by the zoning ordinance.[3] The City ordered Baby Tam to

---

**1.** Section 19.74.010(A) defines sexual conduct as:

1) the fondling or other touching of human genitals, pubic region, buttocks or female breasts;
2) Ultimate sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation,
3) sodomy;
4) masturbation; and excretory functions as part of or in connection with the activities in 1, 2, or 3 above.

Section 19.74.010(B) defines specified anatomical areas as:

1) Human genitals, pubic region, buttocks and female breasts below a point immediately above the top of the areola;

2) Human genitals in a discernibly turgid state, even if completely and opaquely covered.

**2.** During the time that Hot Stuff was operating under the temporary licenses, the City amended the zoning ordinance to include sexual novelties as a product to be considered in computing the percentage of adult inventory. *See* L.V.M.C. § 19A.04(2).

**3.** Under the pre-amendment ordinance, which does not include sexual novelties, the City concluded that 58% of the inventory consisted of adult material. Under the amended ordinance, which added sexual novelties, the auditors found that 83% of the store's inventory was adult material.

cease operations at the Charleston Boulevard location by October 29, 1997.

On October 28, Baby Tam filed suit against the City in the district court seeking to enjoin the City from enforcing the ordinance. Baby Tam alleged that the City's bookstore licensing and zoning ordinance was an unconstitutional prior restraint, in violation of the First and Fourteenth Amendments. Baby Tam also alleged that the amendment to the zoning ordinance, which added sexual novelties to the classification of "sexual material," suppressed Baby Tam's speech in violation of the First and Fourteenth Amendments. The district court denied Baby Tam's motion for a preliminary injunction, and this appeal followed.

## DISCUSSION

To obtain a preliminary injunction, a party must establish either: (1) probable success on the merits and irreparable injury, or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation with the balance of hardships tipping decidedly in its favor. *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *United States v. Nutri-cology, Inc.,* 982 F.2d 394, 397 (9th Cir.1992) (quoting *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985)). They are not separate tests but rather "outer reaches of a single continuum." *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980).

The district court determined that the Las Vegas ordinance did not amount to an unconstitutional prior restraint, and Baby Tam lacked standing to challenge the amendment. The court also concluded that Baby Tam demonstrated neither a probability of success on the merits nor sufficiently serious questions going to the merits to make the case a fair ground for litigation.

Baby Tam asserts both a facial and an as-applied challenge to the constitutionality of the ordinance. We first consider the facial challenge and whether Baby Tam has standing to assert it.

Facial challenges to legislation have been permitted in the context of the First Amendment when the legislation allegedly vests government officials with unbridled discretion. The rationale is that "every application of the statute create[s] an impermissible risk of suppression of ideas." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 n. 15, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). A facial challenge is also appropriate when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech. *FW/PBS,* 493 U.S. at 223–24, 110 S.Ct. 596. Because, according to Baby Tam, the licensing/zoning ordinance vests the City with "unbridled discretion" to deny a license, and because the ordinance lacks constitutionally required procedural safeguards, Baby Tam has standing to assert its facial challenge. In making this challenge, it contends the City's licensing and zoning ordinance is an unconstitutional prior restraint of speech.

A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials. *Near v. Minnesota,* 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Because L.V.M.C. § 6.06A.015 requires all proposed bookstores to apply for and obtain a license before engaging in business, the City's licensing scheme is properly analyzed as a prior restraint. Although prior restraints are not unconstitutional per se, the Supreme Court has repeatedly stated that "[a]ny system of prior restraint" bears "a heavy presumption against its constitutional validity." *FW/PBS,* 493 U.S. at 225, 110 S.Ct. 596 (quoting *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)); *Freedman,* 380 U.S. at 57, 85 S.Ct. 734; *Vance v. Universal Amusement Co.,* 445 U.S. 308, 315–16, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980).

It is well established that, to pass constitutional muster, a legislative prior restraint must contain certain procedural safeguards. *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596; *Freedman,* 380 U.S. at 58–59, 85 S.Ct. 734. A decision to issue or deny a license must be made within a brief, specified and reasonably prompt period of time. *FW/PBS,*

493 U.S. at 226, 110 S.Ct. 596; *Freedman,* 380 U.S at 59, 85 S.Ct. 734. Promptness is essential because undue "delay compel[s] the speaker's silence" while the applicant awaits a decision. *FW/PBS,* at 226, 110 S.Ct. 596. Unreasonable and indefinite delay is tantamount to the complete suppression of speech. *Id.* at 227, 110 S.Ct. 596.

■■■■ A licensing scheme involving a prior restraint must also provide an avenue for prompt judicial review in the event a license is denied. *Id.* This is necessary because the First Amendment cannot tolerate a prior restraint that gives the effect of finality to the licensing official's decision to deny a license. *Freedman,* 380 U.S. at 58, 85 S.Ct. 734. "[O]nly a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression." *Id.*

These two safeguards were first set forth by the Supreme Court in *Freedman,* 380 U.S. at 58–59, 85 S.Ct. 734. The *Freedman* Court also set forth a third procedural safeguard that required the licensor to bear the burden of going to court and justifying a license denial. *Id.* at 59–60, 85 S.Ct. 734. The current status of this third safeguard is unclear. Justice O'Connor's plurality opinion in *FW/PBS* dispensed with the requirement in the context of business licensing schemes. *FW/PBS,* 493 U.S. at 229–30, 110 S.Ct. 596. However, because only Justices Stevens and Kennedy concurred on this point, *FW/PBS* did not overrule *Freedman.*

We need not consider the applicability of the third *Freedman* safeguard in this appeal, because the ordinance clearly lacks the second procedural safeguard of "prompt judicial review." *Id.* This lack of a provision for prompt judicial review also makes it unnecessary for us to determine whether the first *Freedman* safeguard is satisfied.

■■■■ The ordinance does not completely ignore judicial review. It provides that if a bookstore license is denied, the applicant may file a petition for a writ of mandamus in a Nevada state court. L.V.M.C. § 6.06A.025(D). The question we confront is whether this provision for mandamus relief satisfies the requirement of prompt judicial review. We hold that it does not.

Once a mandamus petition is filed in a Nevada state court, the writ may, "in the discretion of the court or judge issuing the writ, be made returnable and hearing thereon be had at any time." Nev.Rev.Stat. § 34.180 (1997). There is no provision that a judicial hearing must be held or a decision must be rendered within a prescribed period of time. Because of the absence of such a provision, the licensing scheme fails to provide for prompt judicial review.

The meaning of "prompt judicial review" in the context of adult business licensing schemes has been considered by five circuits since the Court rendered its plurality decision in *FW/PBS.* The Fifth and Seventh Circuits have held that prompt *access* to judicial review is sufficient, even if there is no time frame for a *hearing* or a *decision* on the merits. *See TK's Video, Inc. v. Denton County, Tex.,* 24 F.3d 705, 709 (5th Cir.1994); *Graff v. City of Chicago,* 9 F.3d 1309, 1324–25 (7th Cir.1993)(en banc). The Fourth and Sixth Circuits have held that prompt judicial review requires a prompt decision on the merits. *See 11126 Baltimore v. Prince George's County, Md.,* 58 F.3d 988 (4th Cir. 1995)(en banc); *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 225 (6th Cir. 1995). The Eleventh Circuit rejects the view that mere access to judicial review is sufficient, but has not said what more is required to satisfy the prompt judicial review standard. *See Redner v. Dean,* 29 F.3d 1495, 1501–02 (11th Cir.1994).

We reject the view of the Fifth and Seventh Circuits that mere access to judicial review is sufficient. As the Seventh Circuit acknowledged in *Graff,* "[a] person always has a judicial forum when his speech is allegedly infringed." *Graff,* 9 F.3d at 1324. Thus, to hold that mere access to judicial review fulfills the second *Freedman* safeguard makes the safeguard itself meaningless. We conclude that "prompt judicial review" means the opportunity for a prompt hearing and a prompt decision by a judicial officer.

The phrase "judicial review" compels this conclusion. The phrase necessarily has two elements—(1) consideration of a dispute by a judicial officer, and (2) a decision. Without consideration, there is no review; without a decision, the most exhaustive review is

worthless. In baseball terms it would be like throwing a pitch and not getting a call. As legendary major league umpire Bill Klem once said to an inquisitive catcher: "It ain't nothin' till I call it." This is also true of judicial review. Until the judicial officer makes the call, it ain't nothin'.

Our view that prompt judicial review requires a prompt judicial decision is supported by the Fourth and Sixth Circuits, and perhaps by the Eleventh Circuit as well. More importantly, the Supreme Court's fountainhead case on this issue, *Freedman v. Maryland*, supports this view. There, in explaining why a motion picture censor's decision could not be the final decision restraining exhibition of a film, the Court stated, "Only a procedure requiring a judicial *determination* suffices to impose a valid final restraint." *Freedman*, 380 U.S. at 58, 85 S.Ct. 734 (emphasis added). The Court further stated: "Any restraint imposed in advance of a final judicial *determination* on the merits must necessarily be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial *resolution*." *Id.* at 59, 85 S.Ct. 734 (emphasis added). And, finally, removing all doubt that "determination" and "resolution" mean a judicial "decision," the Court stated: "Therefore, the procedure must also assure a prompt final judicial *decision*, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." *Id.* (emphasis added).

The Court's use of the word "final" in conjunction with "judicial determination" and "judicial decision" means that the judicial officer should make the final decision denying a license rather than a state censor, if judicial review is sought. It does not refer to a court's decision itself becoming final through various rehearing and appellate procedures. This is made clear by the Court's example of a model for the required procedural safeguards. The model the Court referred to was the procedure it upheld in *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). The Court stated that in *Kingsley*

> We upheld a New York injunctive procedure designed to prevent the sale of obscene books. That procedure postpones any restraint against sale until a judicial

determination of obscenity following notice and an adversary hearing. The statute provides for a hearing one day after joinder of issue; the judge must hand down his decision within two days after termination of the hearing.

*Freedman,* 380 U.S. at 60, 85 S.Ct. 734. Nothing in this model requires that the judicial decision be final; only that the judicial decision be prompt.

The part of the *Freedman* opinion that required a prompt judicial decision was not discussed by Justice O'Connor in her *FW/PBS* plurality opinion. But the *FW/PBS* plurality did not dispute this point. The plurality took issue only with *Freedman*'s requirement that the censor bear the cost of going to court to obtain judicial review; otherwise, *FW/PBS* offered nothing different from *Freedman*'s concept of what "judicial review" meant. *See 11126 Baltimore,* 58 F.3d at 999 ("when Justice O'Connor [in *FW/PBS* ] refers to 'prompt judicial review,' she cites to *Freedman,* and it is unmistakable that *Freedman* required ... a *final judicial determination* ...." (quoting *Freedman,* 380 U.S. at 59, 85 S.Ct. 734) (emphasis added by *11126 Baltimore* ).

■ We hold that because the City's ordinance fails to provide for a prompt hearing and prompt decision by a judicial officer, it fails to provide for prompt judicial review and violates the First and Fourteenth Amendments. Because the ordinance is unconstitutional, Baby Tam has a 100% probability of success on the merits of its suit to obtain a permanent injunction. No facts which might be adduced at a trial will change this result. Accordingly, there is no need to remand for a trial. Baby Tam is entitled to a permanent injunction prohibiting the City from enforcing the ordinance in its present form. Having resolved this issue, it is unnecessary for us to decide the other issues Baby Tam raises.

## CONCLUSION

We reverse the district court's denial of Baby Tam's application for a preliminary injunction. We remand this case to the district court with instructions to issue a permanent

injunction enjoining the City from enforcing Chapter 6.06A of the Las Vegas Municipal Code against Baby Tam to deny it a license to operate its adult bookstore at 5100 W. Charleston Boulevard in the City of Las Vegas, so long as the applicable bookstore licensing and zoning ordinance fails to provide for a prompt hearing and prompt decision by a judicial officer reviewing the City's denial of an application for a bookstore license.

REVERSED and REMANDED.