**SPRING PATENTS, INC., a Hawaii Corporation, Plaintiff,**

v.

**AVON RUBBER & PLASTICS, INC., a United Kingdom Corporation, Defendant.**

**Civ. No. 01–00258 SOM–KSC.**

United States District Court, D. Hawai'i.

Aug. 29, 2001.

R. Patrick Jaress, Jaress & Leong, Honolulu, HI, for plaintiffs.

Corlis J. Chang, Goodsill, Anderson, Quinn & Stifel, Honolulu, HI, for defendants.

*ORDER DENYING DEFENDANT AVON RUBBER & PLASTICS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND INSUFFICIENT SERVICE OF PROCESS; ORDER DENYING PLAINTIFF SPRING PATENTS, INC.'S MOTION FOR PRELIMINARY INJUNCTION*

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

On March 10, 1995, Plaintiff Spring Patents, Inc. ("Spring"), entered into an exclusive license agreement with Bell Avon, Inc. ("Bell Avon"). Under the license agreement, Bell Avon was to be the exclusive manufacturer and distributor of leak-detection technology developed and patented by Spring. According to Spring, the technology can efficiently and effectively detect leaks in underground petroleum tanks and reduce the risk of toxic chemical spills into groundwater.

Spring claims that Defendant Avon Rubber & Plastics, Inc. ("Avon Rubber"), a majority shareholder in Bell Avon, directed Bell Avon to discontinue performance of its obligations under the license agreement. Spring also alleges that Avon Rubber ordered Bell Avon to retain the leak-detection technology instead of returning it to Spring.

Spring filed this action on April 20, 2001, asserting four causes of action against Avon Rubber: (1) improper restraint of trade under 15 U.S.C. § 1; (2) monopolization of the market in violation of 15 U.S.C. § 2; (3) deceptive practices in violation of Haw.Rev.Stat. § 481A–3; and (4) tortious interference with Spring's contractual relations.

The court has two motions before it. In the first motion, Avon Rubber seeks to dismiss this case for lack of personal jurisdiction, improper venue, and insufficient service of process. The court denies Avon Rubber's motion to dismiss without prejudice. On the present record, Spring has shown a sufficient basis for the exercise of specific personal jurisdiction over Avon Rubber. Because there is a sufficient basis for the exercise of specific personal jurisdiction over Avon Rubber on the present record, venue is proper under 28 U.S.C. § 1391. Avon Rubber was also sufficiently served under Fed.R.Civ.P. 4.

In the second motion, Spring seeks a preliminary injunction against Avon Rubber on the ground that Spring has been irreparably harmed by Avon Rubber's alleged interference with the license agreement. Spring asks this court to enjoin Avon Rubber from: (1) interfering with the return of the leak-detection technology; and (2) using, manufacturing, or selling the leak-detection technology. The court, on the present record, denies Spring's motion for preliminary injunction.

## II. *BACKGROUND.*[1]

Spring, a Hawaii corporation, holds the patent for a system designed to detect and measure leaks in underground storage tanks. *See* Declaration of G. Everett Spring (July 6, 2001) ("Spring Dec. No. 1")

---

1. This section constitutes the court's findings of fact in accordance with Fed.R.Civ.P. 52(a). The court's findings of fact are based on the court's file and the materials submitted by the parties on the present motions.

¶ 2, attached to Plaintiff's Motion for Preliminary Injunction. Spring's device relies on use of a flexible membrane lining system that, when inserted into a rigid steel or fiberglass underground storage tank, creates a double-walled tank system that detects leaks. *See id.* ¶ 3. With the leak-detection technology, existing underground storage tanks can allegedly be outfitted to comply with all federal regulations at a much lower cost than would otherwise be the case. *See id.* ¶¶ 3–4.

On March 10, 1995, Spring entered into an exclusive license agreement (the "agreement") with Bell Avon. *See id.* ¶ 9. In exchange for an exclusive license to manufacture and distribute Spring's leak-detection technology, Bell Avon agreed to pay royalties to Spring based on the net sales of the technology. *See* License Agreement at 4–5, attached as Ex. A to Defendant's Motion to Dismiss. The agreement provides that, upon its termination, Bell Avon must stop using, selling, and/or exploiting the leak-detection technology. *See id.* ¶ 18.4. According to the agreement, Bell Avon must also return all confidential and proprietary information regarding the leak-detection technology to Spring upon termination of the agreement. *See id.* If Spring sues Bell Avon to obtain a judicial interpretation or enforcement of the agreement, the agreement provides that the action must be filed in Michigan. *See id.* ¶ 22.0.

After the agreement was entered into, Avon Rubber allegedly directed a Bell Avon employee or agent to file a patent application for an improvement to Spring's leak-detection technology. *See* Complaint ¶¶ 11–12. According to Spring, the improvement had actually been developed by Spring, but the Bell Avon employee or agent falsely claimed to have invented the improvement. *See id.* Spring asserts that the employee's patent application interferes with Spring's ability to patent other fields of use for the leak-detection technology. *See id.* ¶¶ 13–14.

Spring claims that Avon Rubber, the majority shareholder in Bell Avon,[2] intentionally induced Bell Avon to breach the agreement sometime before May 28, 1999. *See* Spring Dec. No. 1 ¶ 12. Spring asserts that Avon Rubber directed Bell Avon to permanently stop performing its obligations under the agreement. *See id.* According to Spring, Avon Rubber's interference with the agreement ultimately induced Bell Avon to terminate the agreement. *See id.*

On March 24, 1999, Spring's attorney, David H. Lee ("Lee"), sent a letter to Dennis Benson ("Benson").[3] *See* Letter from David H. Lee to Dennis Benson (March 24, 1999), attached as Ex. A to Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. In this letter, Lee notified Bell Avon that Spring considered Bell Avon's decision to stop marketing the leak-detection technology to be a breach of the agreement. *See id.* Lee proposed that the agreement be mutually terminated as of May 1, 1999, and that the parties amicably settle all disputes between Spring and Bell Avon arising from the agreement. *See id.*

On May 28, 1999, Benson sent a letter in response to Lee's proposal. *See* Letter from Dennis Benson to David H. Lee (May

---

**2.** Avon Rubber owns an 80 percent interest in Bell Avon. *See* Declaration of Dennis Benson (July 06, 2001) ("Benson Dec. No. 1") ¶ 3, attached to Defendant's Motion to Dismiss.

**3.** Benson is the Vice–President and General Counsel to Avon Rubber and also counsel to Bell Avon. *See* Declaration of Dennis Benson (August 15, 2001) ("Benson Dec. No. 2") ¶ 1, attached to Defendant's Reply Memorandum in Support of Its Motion to Dismiss.

28, 1999), attached as Ex. B to Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. Benson advised Spring that Bell Avon considered Lee's March 24, 1999 letter to be a notice of breach of the agreement and a notice to terminate the agreement as of May 1, 1999. *See id.* at 1. Benson indicated that, while Bell Avon denied that it had breached the agreement, Bell Avon agreed to terminate the agreement as of May 1, 1999. *See id.* Benson notified Lee that Bell Avon would pay no further royalties under the agreement. *See id.* at 2. Benson stated that Bell Avon would cease all use, sale, and/or exploitation of the leak-detection technology and would return the leak-detection technology to Spring in accordance with the agreement. *See id.* Benson invited Spring "to immediately commence licensing or otherwise developing a market for the leak-detection technology." *See id.*

Since Benson's letter, Bell Avon has ceased all performance under the agreement, but has not returned the leak-detection technology to Spring. *See* Spring Dec. No. 1 ¶ 12; Declaration of G. Everett Spring (August 9, 2001) ("Spring Dec. No. 2") ¶ 27, attached to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss. Spring alleges that Avon Rubber will not allow Bell Avon to return the leak-detection technology to Spring. *See* Spring Dec. No. 1 ¶ 13. Spring asserts that it expended all of its resources developing the leak-detection technology and that the agreement is Spring's only source of income. *See id.* ¶ 11. Spring claims that it will go out of business if the leak-detection technology is not returned. *See id.* ¶ 15.

Spring filed this action on April 20, 2001, asserting four causes of action against Avon Rubber: (1) improper restraint of trade under 15 U.S.C. § 1; (2) monopoliza-tion of the market in violation of 15 U.S.C. § 2; (3) deceptive practices in violation of Haw.Rev.Stat. § 481A–3; and (4) tortious interference with Spring's contractual relations. In response to the lawsuit, Dale H. Rosser ("Rosser"), Vice–President of Avon Rubber, conducted an investigation to determine whether Avon Rubber had had any contacts with Hawaii. *See* Declaration of Dale H. Rosser (July 6, 2001) ("Rosser Dec.") ¶ 2, attached to Defendant's Motion to Dismiss. Rosser states that Avon Rubber has no operations, business, real or personal property, or bank accounts in Hawaii. *See id.* ¶ 3. Avon Rubber has never been licensed to transact business in Hawaii, has never transacted business in Hawaii, and has never conducted any promotional activities in Hawaii. *See id.*

### III. *MOTION TO DISMISS.*

#### A. *Standard.*

■ It is the plaintiff's burden to establish personal jurisdiction. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). When, as here, a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *See Pacific Atl. Trading Co., Inc. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir.1985); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). The plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant. *Id.*

■ In determining whether the plaintiff has met this burden, the court must accept uncontroverted allegations in the complaint as true, even if unsupported by any evidence in the record before the court. *See AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996). If the defendant presents evi-

dence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations. *See id.* Conflicts between the parties' affidavits and other discovery materials must be resolved in favor of the plaintiff for purposes of deciding whether a prima facie case for personal jurisdiction exists. *In re Pintlar Corp.*, 133 F.3d 1141, 1144 (9th Cir.), *cert. denied,* 524 U.S. 933, 118 S.Ct. 2334, 141 L.Ed.2d 706 (1998).[4]

### B. *Personal Jurisdiction.*

■■■ A proper exercise of "[p]ersonal jurisdiction requires a two-part showing: (1) that the forum state has an applicable statute conferring jurisdiction on nonresidents, and (2) that the assertion of jurisdiction under the statute comports with constitutional requirements of due process." *People's Ins. Co. of China v. M/V Damodar Tanabe,* 903 F.2d 675, 678–79 (9th Cir.1990). The "jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "coextensive with federal due process requirements."[5] *Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir.1991).

Jurisdiction can be exercised over a nonresident defendant without violating notions of due process only when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation omitted). Therefore, the central inquiry for this court concerns the relationship among Avon Rubber, the District of Hawaii, and this litigation. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). There are two types of relationships with Hawaii that can give rise to personal jurisdiction over a defendant: a relationship that confers general jurisdiction, and a relationship that confers specific jurisdiction. *See Ziegler,* 64 F.3d at 473.

■■■ Spring contends that Avon Rubber is subject only to specific jurisdiction, not to general jurisdiction. A court may exercise specific jurisdiction over a defendant if "the specific cause of action arises out of a defendant's more limited contacts with the [forum] state." *See Roth,* 942 F.2d at 620. The Ninth Circuit has articulated a three-part test to determine when it is proper for a court to exercise specific jurisdiction over a nonresident defendant. *Id.* at 620–21. The exercise of jurisdiction is consistent with due process when:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of

---

**4.** If the plaintiff makes a prima facie showing of personal jurisdiction, however, it does not necessarily mean that he may then go to trial on the merits. *Data Disc,* 557 F.2d at 1285. If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues. *Id.* In this situation, when the plaintiff is put to his full proof, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial. *Id.* When the

jurisdictional facts are intertwined with the merits, it is preferable that the determination of personal jurisdiction be made at trial. *Id.* at 1285 n. 2.

**5.** Hawaii's long-arm statute, Haw.Rev.Stat. § 634–35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment. *Cowan v. First Ins. Co. of Hawaii,* 61 Haw. 644, 608 P.2d 394, 399 (1980). *See also People's Ins. Co. of China,* 903 F.2d at 679.

conducting activities in the forum; (2) the claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000).

### 1. *Purposeful Availment.*

█ Physical contacts with the forum state are not necessary to establish purposeful availment. *Calder v. Jones,* 465 U.S. 783, 788–89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The Supreme Court has established that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder,* 465 U.S. at 791, 104 S.Ct. 1482. "In *Calder,* the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis." *Bancroft & Masters,* 223 F.3d at 1087. "To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.*

The key question here is whether Avon Rubber's alleged acts were "expressly aimed" at Spring. "Express aiming is a concept that in the jurisdictional context hardly defines itself." *Id.* In the Ninth Circuit, the express aiming requirement is satisfied when the defendant is "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* Accordingly, the court focuses its analysis on whether Spring has alleged matters that, if true, would constitute a prima facie showing that Avon Rubber engaged in wrongful conduct targeted at Spring in Hawaii. The Complaint contains such allegations. Spring has alleged, among other things, that: (1) a Bell Avon employee, at Avon Rubber's direction, applied for a patent to block Spring's use of the leak-detection technology; (2) Avon Rubber deprived Spring's potential customers in Hawaii of the leak-detection technology; (3) Avon Rubber intentionally induced Bell Avon to breach the agreement; (4) Avon Rubber communicated with Spring in Hawaii and notified Spring that the leak-detection technology was unmarketable and that Bell Avon had terminated the agreement; (5) Avon Rubber misled Spring; and (6) Avon Rubber interfered with Spring's ability to develop, market, and sell the leak-detection technology.[6] *See* Complaint ¶¶ 11–13, 17–21.

---

**6.** The court notes that Spring also relies on Benson's May 28, 1999 letter to Spring's attorney as evidence demonstrating that Avon Rubber had contacts with Spring in Hawaii. *See* Letter from Dennis Benson to David H. Lee (May 28, 1999), attached as Ex. B to Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. Although Benson's letter was written on Avon Rubber letterhead and Benson signed the letter as Vice President and General Counsel of Avon Rubber, Avon Rubber argues that Benson wrote the letter in his capacity as Bell Avon's counsel, not in his capacity as Vice President and General Counsel of Avon Rubber. Appearing to interpret the letter as a matter of law, Benson says that the letter was "clearly intended to set forth the position of Bell Avon" and not Avon Rubber. *See* Benson Dec. No. 2 ¶ 4. However, it is not Benson's function to construe exhibits. Instead, Benson may provide facts. But Benson never states that it was his personal intent to draft the letter in his capacity as Bell Avon's counsel and not in his capacity as Avon Rubber's Vice President and General Counsel. Accordingly, Avon Rubber has not adequately explained why Avon Rubber letterhead was used or why Benson signed the letter as Avon Rubber's Vice President and General Counsel.

Avon Rubber has not presented sufficient evidence to contradict Spring's allegations. The Complaint must therefore be deemed uncontroverted. At most, Avon Rubber's general counsel makes the conclusory statement that Avon Rubber did not "commit any intentional act aimed against Spring Patents, Inc." *See* Benson Dec. No. 2 ¶ 6. The court does not consider this mere conclusion to be evidence sufficient to shift the burden to Spring to make an evidentiary showing of personal jurisdiction. If a mere denial were sufficient to shift the burden, the concept of prima facie allegations would have no applicability to any personal jurisdiction challenge. Avon Rubber must do more than it has done before the burden will shift back to Spring to come forward with evidence of how Avon Rubber has submitted to this court's jurisdiction.

When the allegations in the Complaint are accepted as true, Spring's allegations are sufficient to permit this court's exercise of specific personal jurisdiction over Avon Rubber under the *Calder* effects test. The Complaint alleges that Avon Rubber intentionally interfered with the agreement. Avon Rubber's conduct was allegedly aimed at Hawaii because it was targeted toward Spring, a Hawaii corporation. Moreover, the effects of Avon Rubber's alleged conduct were felt in Hawaii. Accordingly, on the present record, Spring's allegations support the conclusion that Avon Rubber purposefully availed itself of Hawaii.

2. *Relation to Forum–Related Activities.*

This court will not assert specific jurisdiction over Avon Rubber unless Spring's claims arise out of or result from Avon Rubber's forum-related activities. *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 271 (9th Cir.1995). The issue before this court is whether, "but-for" Avon Rubber's alleged contacts with Hawaii, Spring would have the claims in issue. *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995). Avon Rubber allegedly interfered with Spring's agreement with Bell Avon with the knowledge that Spring was a Hawaii resident. "But-for" Avon Rubber's alleged actions directed toward Hawaii, Spring's claims would not have arisen. On the present record, Spring's claims therefore arose out of Avon Rubber's forum-related activities.

3. *Reasonableness.*

 Avon Rubber must overcome "the presumption that the exercise of jurisdiction is reasonable because it has been shown that [it] purposefully availed himself of the forum's benefits." *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1198 (9th Cir.1988) (internal citation and quotation omitted). The burden thus shifts to Avon Rubber "to present a compelling case that jurisdiction would be unreasonable." *Id.* The district court must balance the following seven factors to determine whether the exercise of jurisdiction is reasonable: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Roth,* 942 F.2d at 623. None of the factors is dispositive and the district court must balance all seven. *Id.*

a. *Purposeful Interjection.*

"Even if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core–*

*Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir.1993) (internal citations and quotations omitted). Avon Rubber's contacts with Hawaii were not extensive. As set forth above, Avon Rubber has no operations, business, real or personal property, or bank accounts in Hawaii. There is no suggestion that Avon Rubber has ever been licensed to transact business in Hawaii, has ever transacted business in Hawaii, or has ever conducted any promotional activities in Hawaii. Avon Rubber's only contact with Hawaii was its alleged interference with Spring's agreement with Bell Avon. Because Avon Rubber's contacts were few, this factor weighs against the exercise of personal jurisdiction, but this weight is not heavy. *See id.* at 1488 (finding that attenuated contacts weighed only slightly in the defendant's favor because the contacts, although slight, were sufficient to meet the purposeful availment prong).

### b. *Defendant's Burden.*

A defendant's burden in litigating in the forum state is a factor in the assessment of reasonableness. *Roth*, 942 F.2d at 623. The Ninth Circuit has stated, however, that "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.1998) (quoting *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir.1995)). While certainly Avon Rubber will have to pay to bring its own employees to Hawaii for trial, the extent of this inconvenience is not at all clear. Avon Rubber has neither identified its potential witnesses nor stated that its potential witnesses live outside of Hawaii. Certainly Avon Rubber does not show that the inconvenience of litigating in Hawaii would deprive Avon Rubber of due process. In this "era of fax machines and

discount air travel, requiring [the defendant] to litigate in [a foreign jurisdiction] is not constitutionally unreasonable." *Panavision*, 141 F.3d at 1323 (internal quotations omitted). Given the ease of travel and communication in the modern era and the absence of a specific showing establishing an undue burden on Avon Rubber, this factor is, on the present record, neutral.

### c. *Conflict of Laws.*

The next factor concerns the extent to which the exercise of jurisdiction in Hawaii would conflict with the sovereignty of Michigan. *Roth*, 942 F.2d at 623. Avon Rubber has not demonstrated that Hawaii law is in conflict with Michigan law on Spring's state claims. This factor therefore is neutral.

### d. *Forum's State Interest.*

Spring is a Hawaii corporation. Hawaii therefore has an interest in this case to provide an effective means of redress for one of its citizens. *See Sinatra*, 854 F.2d at 1200. Hawaii's interest in adjudicating this suit therefore weighs in favor of Spring.

### e. *Efficient Judicial Resolution.*

Consideration of the efficiency of the forum focuses on the location of the witnesses and evidence. *Ziegler*, 64 F.3d at 475–76. This factor is no longer weighed heavily given the modern advances in communication and transportation. *See Panavision*, 141 F.3d at 1323 (citing *Caruth*, 59 F.3d at 129). This factor does not weigh in favor of either party. Neither party has expressly identified the potential witnesses for this case. The court therefore cannot determine on the present record whether Hawaii would be the most efficient forum to hear this case.

### f. *Convenient and Effective Relief.*

Because Spring lives in Hawaii, Hawaii would be a more convenient forum for Spring. However, in analyzing this factor,

little weight is given to a plaintiff's inconvenience. *See Roth,* 942 F.2d at 624. A court should place greater significance on the possibility of effective relief. *See Core–Vent,* 11 F.3d at 1489. It appears that both Hawaii and Michigan would provide effective relief for Spring's claims. Accordingly, this factor weighs only slightly in favor of exercising personal jurisdiction.

### g. *Alternative Forum.*

Spring bears the burden of proving the unavailability of an alternative forum. *See Core–Vent,* 11 F.3d at 1490. Here, Spring has not met that burden. As an alternative forum may exist for Spring's suit, this factor may weigh against the exercise of personal jurisdiction.

After balancing the relative weight of each factor on the present record, the court concludes that the exercise of personal jurisdiction over Avon Rubber is reasonable. *Sinatra,* 854 F.2d at 1201. Although some factors weigh slightly against the exercise of personal jurisdiction, the court recognizes that there is a presumption of reasonableness on the present record, given Avon Rubber's alleged contacts with Hawaii. *See id.* Avon Rubber has the burden of rebutting that presumption. *See id.* Because Avon Rubber does not do that, this court finds it reasonable to exercise specific personal jurisdiction over Avon Rubber on the present record.

Although the court finds on the present record that it may exercise personal jurisdiction over Avon Rubber, the court remains concerned about whether Spring will be able to support its claim of jurisdiction as the record develops. Avon Rubber may be able to show through further submissions that Spring's allegations are insupportable and that Spring's remedy is to pursue Bell Avon in a different forum. The court therefore gives the parties 60 days in which to conduct discovery limited to the personal jurisdiction issue. While the court understands that it is quite often impossible to separate personal jurisdiction from the merits of the case entirely, the court limits discovery to the personal jurisdiction issue so as to preclude discovery on the full panoply of issues that may be addressed on the merits. Discovery of facts going to the merits of the case must be limited only to those facts that are also necessary to the determination of personal jurisdiction. Avon Rubber may renew its challenge to personal jurisdiction within 60 days of the court's order.

### C. *Improper Venue.*

 The general venue provision provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). For purposes of venue under section 1391, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because Avon Rubber is subject to personal jurisdiction in Hawaii on the present record, Avon Rubber is deemed to reside in Hawaii for purposes of venue. *See id.* Hawaii is therefore an appropriate venue for this action, at least based on the pres-

ent record. 28 U.S.C. § 1391(b) (venue is proper in a "judicial district where any defendant resides, if all defendants reside in the same state").

### D. *Insufficient Service of Process.*

 Avon Rubber asserts that the Complaint erroneously names a nonexistent entity called "Avon Rubber & Plastics, Inc., a United Kingdom corporation," as Defendant. Avon Rubber states that it is a Delaware corporation, not a United Kingdom corporation. Avon Rubber concludes that, because no Delaware corporation by that name exists, no service of process could have been achieved on any agent of this nonexistent corporation under Fed.R.Civ.P. 4(h). The court disagrees.

Avon Rubber admits that the Complaint was served on Avon Rubber in Cadillac, Michigan. In fact, Avon Rubber recognizes that Spring has complied with the technical requirements of Fed.R.Civ.P. 4. Avon Rubber's sole argument in support of its motion to dismiss for insufficient service of process is that Avon Rubber is improperly identified in the Complaint as a United Kingdom corporation and not a Delaware corporation. Although the description of Avon Rubber as a United Kingdom corporation was incorrect, Avon Rubber was still properly named and served as a defendant. The Complaint gives adequate notice to Avon Rubber that it is being sued in this court. The fact that Avon Rubber is incorrectly identified as a United Kingdom corporation has no bearing on whether Avon Rubber was properly served with the Complaint. Accordingly, the court denies Avon Rubber's motion to dismiss on this ground.

### IV. *MOTION FOR PRELIMINARY INJUNCTION.*[7]

#### A. *Standard.*

 To obtain a preliminary injunction, a party must demonstrate either: (1) probable success on the merits and irreparable injury; or (2) sufficiently serious questions going to the merits, with the balance of hardships tipping decidedly in favor of the party requesting relief. *Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir.1998); *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993), *cert. denied,* 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994).[8] When the public interest is involved, a district court must examine whether that public interest favors the plaintiff. *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992).

 The two formulations summarized in *Baby Tam* represent two points on a sliding scale, with the required degree of irreparable harm increasing as the probability of success decreases. *Baby Tam,* 154 F.3d at 1100; *Miller v. California Pac. Med. Ctr.,* 19 F.3d 449, 456 (9th Cir.1994). These formulations are not separate tests, but the extremes of a single continuum. *Baby Tam,* 154 F.3d at 1100; *Los Angeles Mem'l Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likeli-

---

**7.** This section constitutes the court's conclusions of law in accordance with Fed.R.Civ.P. 52(a).

**8.** Traditionally, there were four factors to be considered in deciding whether an injunction should issue: (1) the likelihood of the plaintiff's success on the merits; (2) the threat of irreparable harm to the plaintiff if the injunction is not imposed; (3) the relative balance of the harm to the plaintiff and the harm to the defendant; and (4) the public interest. *Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1388–89 (9th Cir.1988). These factors have been collapsed into the test articulated above. *See id.*

hood of success on the merits as when the balance tips less decidedly." *Native Village of Venetie,* 856 F.2d at 1389 (quoting *Aguirre v. Chula Vista Sanitary Serv.,* 542 F.2d 779 (9th Cir.1976)).

If a plaintiff shows no chance of success on the merits, the preliminary injunction should not issue. Under any formulation, the moving party must demonstrate a "significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir.1987). A plaintiff must do more than merely allege imminent harm sufficient to establish standing; he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Associated Gen. Contractors of Cal., Inc. v. Coalition For Econ. Equity,* 950 F.2d 1401, 1410 (9th Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

### B. *Likelihood of Success on the Merits.*

 Spring bases its motion for preliminary injunction only on its claim for tortious interference with Spring's contractual relations.[9] In Hawaii, the elements of a tortious interference with contractual relations claim are: (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3)

the defendant's intentional inducement of a third party to breach the contract; (4) the absence of justification on the defendant's part; (5) a breach of the contract by the third party; and (6) damages to the plaintiff. *Lee v. Aiu,* 85 Hawai'i 19, 936 P.2d 655, 667 (1997) (citing *Weinberg v. Mauch,* 78 Hawai'i 40, 890 P.2d 277, 287 (1995)).

 Spring has not established that there is a probability of success on the merits or even a serious question going to the merits of its tortious interference with contract claim. Spring has failed to adduce any evidence to support a finding that Avon Rubber intentionally induced Bell Avon to breach the agreement.[10] The record fails to show that Avon Rubber had any communications with Bell Avon regarding the agreement. If there were no communications between Avon Rubber and Bell Avon regarding the agreement, Avon Rubber could not have intentionally induced Bell Avon to breach the agreement. Accordingly, the evidence in the record is insufficient to establish that Spring is likely to succeed on the merits of its tortious interference with contract claim.[11]

### C. *Irreparable Harm.*

 Spring has also failed to demonstrate that a preliminary injunction is nec-

---

**9.** Because Spring does not assert any other claims as a basis for preliminary injunctive relief, the court does not consider Spring's other claims on this motion.

**10.** In support of its argument, Spring submits the declaration of G. Everett Spring. *See* Spring Dec. No. 1. In his declaration, G. Everett Spring states that Avon Rubber intentionally interfered with the agreement and directed Bell Avon to breach the agreement. *See* Spring Dec. No. 1 ¶¶ 12–13. The court disregards G. Everett Spring's assertion because Spring has not affirmatively shown that G. Everett Spring is competent to testify about Avon Rubber's alleged interference or that this assertion is made on personal knowledge. *See* Local Rule 7.6 (requiring that "[f]actual contentions made in support of or

in opposition to any motion shall be supported by affidavits or declarations ... and shall conform to the requirements of Fed. R.Civ.P. 56(e)"); Fed.R.Civ.P. 56(e) (stating that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

**11.** The court is also concerned that Spring possibly cannot establish the first element of its tortious interference with contract claim. The first element requires a contract or economic relationship between plaintiff and a *third party. Lee,* 936 P.2d at 667. Generally, a contracting party cannot be held liable in tort for interfering with its own contract. *See*

essary to avoid irreparable harm. First, Spring's mere claim that it will go out of business if a preliminary injunction is denied does not constitute irreparable injury. *See Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir.1985) (finding that going out of business is not, by itself, irreparable injury). Second, Spring's damages appear to be primarily economic in nature. *Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984) (noting that purely monetary damages are not normally considered irreparable). Finally, Spring has waited almost two years to file this suit and to seek preliminary injunctive relief. *See id.* (finding that delay is a factor to consider in determining whether to grant a preliminary injunction motion).

Spring has failed to demonstrate a likelihood of success on the merits or an irreparable injury on its tortious interference with contract claim. The court additionally finds on the present record that: (1) there are not sufficiently serious questions going to the merits of this claim to make it a fair ground for litigation; and (2) the balance of hardships does not tip decidedly in favor of Spring. Accordingly, the court denies Spring's motion for a preliminary injunction.

## V. CONCLUSION.

The court denies Avon Rubber's motion to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process without prejudice. Spring has made a prima facie showing of personal jurisdiction on the present record. However, the court remains concerned about whether Spring will be able to support its claim of jurisdiction as the record develops. The court therefore gives the parties 60 days in which to conduct discovery limited to the personal jurisdiction issue. Avon Rubber has 60 days in which to renew its challenge to personal jurisdiction.

Because Avon Rubber is subject to personal jurisdiction in Hawaii on the present record, Avon Rubber is deemed to reside in Hawaii for purposes of venue. Hawaii is therefore an appropriate venue for this action, at least based on the present record. Avon Rubber was also sufficiently served under Fed.R.Civ.P. 4.

Having failed to demonstrate a likelihood of success on the merits, irreparable injury, serious questions on the merits, or a balance of hardships tipping heavily in its favor, Spring is not entitled to its requested preliminary injunctive relief. Accordingly, the court denies Spring's motion for preliminary injunction.

IT IS SO ORDERED.

---

*Boulevard Assoc. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1035 (2d Cir.1995). As a majority shareholder in Bell Avon, Avon Rubber at least arguably is not a third party for interference purposes. Possibly, no cause of action can be sustained against Avon Rubber for tortious interference with contract when the contract in question is between Bell Avon and Spring. *See Webber v. Inland Empire Investments, Inc.*, 74 Cal.App.4th 884, 88 Cal. Rptr.2d 594, 602 (1999) (stating that the "tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance"); *Baum v. United Cable Television Corp. of E. Conn.*, 1992 WL 175119, at *4 (Conn.Super.Ct. July 20, 1992) (holding that a majority shareholder was "at least an indirect party to the contract and therefore no cause of action can be sustained against it for tortious interference of contract"). Because the parties have not briefed this issue, however, the court declines to address it on this motion.