Mario CANO; Paula Rangel; Maria Calleros; Norma E. Ramirez; Margo Munoz; Bennie G. Corona; Myron Garcia; Frank Diaz; Consuelo E. Rodriguez; Jose Ruelas; Racquel Torres; Enrique F. Aranda; Josephine Santiago; Antonio M. Lopez; Jose

R. Pacheco; Luis Natividad; Marisol Natividad; Luis Garcia; Luz Palomino; Silvia Palomino; Ignacio Leon; Joaquin Galan; Ernesto Bustillos; Cathy Espitia; Salvadoran American Leadership and Educational Fund, Plaintiff(s),

v.

Gray DAVIS, in his official capacity as Governor of the State of California; Cruz Bustamante, in his official capacity as Lieutenant Governor of the State of California; Bill Jones, in his official capacity as Secretary of State of the State of California; John Burton, in his official capacity as President Pro Tempore of the California State Senate; Robert Hertzberg, in his official capacity as Speaker of the California State Assembly, Defendant(s).

**No. CV 01–08477MMMRCX.**

United States District Court, C.D. California.

Nov. 5, 2001.

---

Vibiana Andrade, Thomas A. Saenz, Antonia Hernandez, Steven Joaquin Reyes, Los Angeles, CA, Denise M. Hulett, San Francisco, CA, Maria Blanco, Sacramento, CA, for Plaintiffs.

Otto I. Pena, Otto I Pena Law Offices, Los Angeles, CA, Gail H. Morse, Jenner & Block, Chicago, IL, for Intervenors.

Lois R. Mauro, Jennifer Kathryn Rockwell, CAAG Office of Attorney General of California Correctional Law Section, Sacramento, CA, Bruce A. Wessel, Jonathan H. Steinberg, Elliot N. Brown, Laura W. Brill, Irell & Manella, Los Angeles, CA, Thomas E. Gauthier, George Waters, Olson Hagel Waters & Fishburn, Sacramento, CA, Robin B. Johansen, Miguel Marquez, Kathleen J. Purcell, Joseph Remcho, Remcho Johansen & Purcell, San Leandro, CA, for Defendants.

Holger G. Besch, Jones Day Reavis & Pogue, Los Angeles, CA, Andrew McBride, Wiley Rein & Fielding, Michael A. Carvin, Jones Day Reavis & Pogue, Washington, DC, Eric R. Wiesel, Donald H. Heller, Donald H. Heller Law Offices, Sacramento, CA, for Intervenor Defendants.

Geraldine R. Gennet, Kerry W. Kircher, Office of the General Counsel, Washington, DC, for Amicus.

Gerson A. Zweifach, Paul Mogin, Williams & Connolly, Washington, DC, Charles F. Kester, Kester & Isenberg, Encino, CA, for Movants.

Before: STEPHEN REINHARDT, Circuit Judge, MARGARET M. MORROW and CHRISTINA A. SNYDER, District Judges.[1]

## ORDER DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER

PER CURIAM.

Following the decennial census conducted in 2000, the California legislature passed, and the Governor signed, a bill that re-drew state and federal legislative district boundaries in accordance with the new census data. The redistricting legislation was signed into law by the Governor on September 27, 2001. A number of Latino voters filed this action challenging the legality of the redistricting plan four days thereafter. The plaintiffs assert that three of the plan's provisions have the unlawful effect of diluting Latino voters' ability to elect representatives of choice.

Specifically, plaintiffs contend that: (1) Congressional districts 27 and 28 unlawfully divide the Latino community in a portion of Los Angeles County's San Fernando Valley into two districts instead of preserving the integrity of that community and establishing one majority-Latino district in which Latinos could elect a representative of choice;[2] (2) Congressional district 51, which encompasses parts of

---

1. A three-judge district court consisting of one circuit judge and two district judges was convened pursuant to 28 U.S.C. § 2284(a).

2. In our Order, we refer to the challenged congressional districts by the numbers assigned to them in the 2001 redistricting plan. Previously, district 27 was numbered 24 and district 28 was numbered 26.

San Diego and Imperial Counties, unlawfully excludes certain Latino neighborhoods that, if included, would preserve the integrity of that Latino community and allow Latinos in that district to elect a representative of choice; and (3) Senate district 27 violates the integrity of the Latino community of Southeast Los Angeles County and fails to place its residents in a majority-Latino district in which Latinos could elect a representative of choice. Plaintiffs seek a temporary restraining order that would enjoin the State of California from conducting primary elections scheduled for March 2002 in congressional districts 27, 28, 51 and 53.[3] On October 31, 2001, the court heard extensive oral argument on the matter. For the following reasons, the request for a temporary restraining order is denied.

To obtain interim relief, a party must establish either probable success on the merits and irreparable injury, or "sufficiently serious questions going to the merits to make the case a fair ground for litigation, with the balance of hardships tipping decidedly in its favor." *See Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir.1998). Additionally, as the parties recognize, enjoining an election is an "extraordinary remedy" involving a far-reaching power, *Oden v. Brittain*, 396 U.S. 1210, 1211, 90 S.Ct. 4, 24 L.Ed.2d 32 (1969) (Black, J., Circuit Justice), which is almost never exercised by federal courts prior to a determination on the merits, other than in cases involving a violation of the preclearance requirement of § 5 of the Voting Rights Act.

Plaintiffs' legal theories are threefold. First, they allege that each of the challenged redistricting decisions has the effect of diluting Latino voting power in contravention of § 2 of the Voting Rights Act, 42 U.S.C. § 1973. Second, they assert that the challenged congressional districts were intentionally drawn to dilute Latino votes, and violate § 2 for that reason as well; similarly, they contend that the intentional dilution violates Constitution. Finally, they contend that the congressional districts constitute an improper "racial gerrymander" under the cause of action established by the Supreme Court in *Shaw v. Reno*, 509 U.S. 630, 648, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Allegations that racial discrimination has infected the process by which elected representatives are chosen must be of the highest concern to any court to which they are presented, for all "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

At the oral hearing and in their papers, both parties directed their arguments primarily to the challenge to two San Fernando Valley congressional districts, districts 27 and 28. Plaintiffs submitted evidence that a consultant to the state legislature's redistricting committee made several statements that reflected a legislative intent to establish the Latino population in

---

**3.** The plaintiffs initially requested that the court enjoin the March primary for State Senators and United States Representatives statewide. However, in their reply papers and at oral argument, plaintiffs acknowledged that the least intrusive relief they require would be the postponement of the March primary in the four listed congressional districts only. The delay of the election in congressional district 53 is requested because plaintiffs' desired relief would require the adjustment of

that district's boundaries to correct alleged infirmities in district 51. Plaintiffs suggest that the primary election for the four congressional districts be conducted in June, which is when, until recently, statewide California primaries have always been held. They assert that if conducting parts of the primary election at two different times would create a problem, the state could decide to hold the entire 2002 primary election in June.

each of those districts at a level such that neither Anglo incumbent would be susceptible to a serious primary challenge by a Latino candidate; they also submitted expert testimony that, by deliberately placing a number of Latino voters in the 27th district who should properly have been in the 28th, the final redistricting plan achieved that objective. Plaintiffs also rely on evidence that in the course of the legislative redistricting efforts, a substantial number of additional Latino voters were first moved to the 27th district and then restored to the 28th after the Anglo incumbent in the 27th vehemently objected to the inclusion of so many Latino voters in his district. Additionally, plaintiffs submitted statistical evidence demonstrating that prior to redistricting the Latino voting age population in the 28th congressional district was 60.02%, while in the final redistricting plan it was reduced to 49.18%. The percentage of voting age Latinos was reduced even though over the preceding decade the district's Latino voting age population had increased by 41%, and the non-Latino voting age population had decreased substantially.

Defendants dispute both the factual accuracy and the legal significance of much of the plaintiffs' evidence. They contend that race was one of many factors properly considered by the legislature in redistricting, and that there was no intent to dilute the strength of Latino votes in any of the affected congressional districts. Among the factors considered by the legislature, defendants contend, were the protection of

incumbents, the restoration of previously represented areas to a long-time incumbent's district, the need to assure compliance with § 2 of the Voting Rights Act, and the obligation to ensure that any effort to maximize Latino voting strength in a particular district did not give rise to a *Shaw v. Reno* racial gerrymander claim. Defendants also argue that plaintiffs cannot prove effect or injury under either § 2 of the Voting Rights Act or the Equal Protection Clause. Citing statistics regarding the election of Latino legislators in districts with less than 50% Latino registration (in some cases, less than 40% or 30%), defendants dispute the suggestion that the percentage of Latino voters in congressional district 28 so dilutes the strength of Latino votes that it prevents the election of Latinos' candidate of choice. They note that Latino candidates have routinely won majority support in the precincts comprising district 28, and assert that the data do not support a conclusion that voting blocs in multi-ethnic California are organized along racial or ethnic lines.

Plaintiffs' statutory and constitutional claims give rise to substantial and complicated questions of fact, as well as novel and difficult questions of law. The factual questions presented require considerable further development through discovery and a hearing on the merits. Plaintiffs' allegations raise challenging and perhaps unique issues regarding the application of voting rights laws in a region with a population that is both rapidly changing and multi-ethnic.[4] As the demographic make-

---

4. For example, the 2000 Census revealed that there was no majority racial or ethnic group in Los Angeles County; the makeup of the county's population was: Latino, 44.6%; non-Hispanic white, 31.1%; Asian, 11.9%; and African–American, 9.8%. *See Los Angeles County QuickFacts from the U.S. Census Bureau,* available at http://quickfacts.census.gov/qfd/states/06/06037.html (last modified Sept. 7, 2001). According to the County

of Los Angeles, this reflects an increase of 34% in the Latino population since 1990, and an increase of 37% in the Asian population. In contrast, the African–American population held roughly constant over the past decade, while the non-Hispanic white population dropped 12.2%. *See 2000 Los Angeles County Demographic Profile,* available at http://planning.co.la.ca.us/rsrch—LACountyProfile.pdf (last modified Oct. 4, 2000).

up of Southern California continues to evolve, voter attitudes, voting patterns, the political interests of various racial or ethnic groups, and the extent and nature of the participation of such groups in the political process inevitably continues to change as well. The legal questions raised by plaintiffs' complaint can be answered no more readily than the factual ones, and the answers will likely depend at least in part on the contents of a fully developed factual record. The existence of countervailing evidence offered by defendants, as well as the novelty and complexity of the legal issues, prevent us from concluding on the limited record before us that plaintiffs will probably succeed on the merits.

Plaintiffs do, however, present sufficiently serious questions to make the case a fair ground for litigation. Nonetheless, on the present record, the balance of hardships does not tip decidedly in plaintiffs' favor. This is so primarily because in evaluating that balance, we must consider whether the equitable relief sought would advance the public interest. *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for [sic]·the public consequences in employing the extraordinary remedy of injunction"). The public interest factor is particularly important in cases in which a party seeks to enjoin an election. The Supreme Court has repeatedly held that "redistricting and reapportioning legislative bodies is a legislative task which the courts should make every effort not to preempt." *McDaniel v. Sanchez*, 452 U.S. 130, 150 n. 30, 101 S.Ct. 2224, 68 L.Ed.2d 724 (quoting *Wise v. Lipscomb*, 437 U.S.

535, 539, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978)); *see also Reynolds v. Sims*, 377 U.S. 533, 585, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Because the conduct of elections is so essential to a state's political self-determination, the strong public interest in having elections go forward generally weighs heavily against an injunction that would postpone an upcoming election. *See Page v. Bartels*, 248 F.3d 175, 194–97 (3d Cir.2001); *Chisom v. Roemer*, 853 F.2d 1186, 1189–90 (5th Cir.1988).[5]

Moreover, here the record contains specific evidence as to the disruptive effect fragmentation or postponement of the statewide election would have on the body politic. While we view some of the defendants' assertions in this regard with a certain degree of skepticism, we cannot disregard them entirely. Thus, although in the proceeding before us, plaintiffs raise important and substantial questions, the existence of those questions does not serve to overcome the strong public interest in the regular conduct of elections, either as a matter of general legal principle or in light of the particular facts before us.

For the foregoing reasons, plaintiffs' application for a temporary restraining order is hereby denied.

---

**5.** Indeed, a state's ability to establish its internal political boundaries without federal intervention is so important to the proper balance of our federal system that the Supreme Court has held that it is proper for a federal court to allow an election to go forward even if that court has found the districting scheme to violate the constitution, so that the state's elected representatives may have the opportunity to refashion the districts in a permissible manner. *See Reynolds,* 377 U.S. at 585, 84 S.Ct. 1362.