**4805 CONVOY, INC., a California corporation, Plaintiff–Appellant,**

v.

**CITY OF SAN DIEGO, a political subdivision of the State of California, Defendant–Appellee.**

No. 97–55295.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1998.

Filed July 14, 1999.

A. Dale Manicom, San Diego, California, for the plaintiff-appellant.

Grant Richard Telfer, Deputy City Attorney, San Diego, California, for the defendant-appellee.

Before: HUG, Chief Judge, KOZINSKI, Circuit Judge, and FITZGERALD, District Judge.[1]

HUG, Chief Judge:

4805 Convoy, Inc. ("Convoy"), which operates a business that presents nude dancing, brought this facial challenge under 42 U.S.C. § 1983 asserting that the City of San Diego's ("City") nude dancing licensing ordinance was unconstitutional. The district court granted summary judgment in favor of the City, concluding that the City's licensing scheme provided adequate procedural safeguards and that Convoy therefore failed to show that the scheme was facially unconstitutional. Convoy filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we REVERSE and REMAND.

### FACTUAL AND PROCEDURAL BACKGROUND

Convoy operates a business which features both male and female nude entertainers. In 1987, Convoy obtained a Nude Entertainment License, which is required of all businesses that present nude dancing. San Diego, Ca., Municipal Code ("SDMC") §§ 33.3605, 33.3606. The SDMC also contains operating regulations for Nude Entertainment Businesses, including the requirements that nude dancers be licensed and that they stay at least six feet away from patrons. SDMC § 33.3610.

The City alleges that during an inspection of Convoy's business, officers determined that Convoy broke both of these rules during an "amateur night" by allowing unlicensed women to dance topless and closer than six feet to the patrons. In a written notice of October 3, 1995, the City suspended Convoy's license for two weeks pursuant to SDMC §§ 33.0401 and 33.3616, which provide for the suspension and revocation of a license for violating the regulations.

Convoy administratively appealed the suspension of its license, and the suspension was stayed during the administrative appeal process, pursuant to SDMC § 33.0501. The hearing officer ruled on Convoy's appeal on February 20, 1996, holding that Convoy had violated § 33.3610(a) (unlicensed dancers), but not § 33.3610(f) (six-foot rule), and reduced the length of the suspension from fourteen to seven days. Convoy exercised its right to a review of the hearing officer's decision by the Public Services and Safety Committee ("Committee") of the City Council, which denied the appeal on March 22, 1996.

On June 18, 1996, Convoy filed a Petition for Writ of Administrative Mandamus, pursuant to Cal.Code Civ. P. § 1094.5, in the Superior Court of California in San Diego County. The court issued a Judgment Denying the Writ of Mandate on April 7, 1997, but ordered the suspension of Convoy's license stayed pending resolution of Convoy's federal district court suit and this appeal.

In addition to its administrative appeals and state court review, Convoy sought relief concurrently in the federal courts. On November 22, 1995, Convoy filed suit in federal district court to enjoin the City from suspending Convoy's license under the existing administrative scheme. Convoy alleged that the SDMC provisions regulating the issuance, suspension, and revocation of licenses for nude entertainment businesses were unenforceable because they unconstitutionally restrained speech by failing to provide adequate procedural safeguards. On January 12, 1996, the district court granted Convoy's request for a preliminary injunction pending completion of any judicial review of the license suspension.

Convoy filed a motion for summary judgment in the district court on July 15, 1996, seeking an order permanently en-

1. The Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

joining the City from suspending its license and declaring the City's licensing scheme unenforceable as an invalid prior restraint. In response, the City filed an opposition which included a cross-motion for summary judgment. The district court granted summary judgment in favor of the City on October 22, 1996, concluding that the City's licensing scheme provided adequate procedural safeguards and that Convoy therefore had failed to show that the City's scheme was unconstitutional on its face. On November 1, 1996, Convoy filed a motion to alter or amend the judgment, pursuant to Fed.R.Civ.P. 59(e). The motion was denied on January 27, 1997, and Convoy filed a timely notice of appeal on February 19, 1997.

## DISCUSSION

### 1. *Standing*

■ As an initial matter, we must determine whether Convoy has standing to bring a facial challenge under the First Amendment to the City's licensing scheme.[2] Standing is a question of law reviewed de novo. *See Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir.1998).

■■ "A successful challenge to the facial constitutionality of a law invalidates the law itself." *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998). Thus, facial challenges "are allowed not primarily for the benefit of the litigant, but for the benefit of society-to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Secretary of State of Maryland v.*

*Joseph H. Munson Co.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).[3]

■ We have previously observed that facial challenges under the First Amendment are permitted "when the legislation allegedly vests government officials with unbridled discretion" and "when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech." *Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir.1998). Convoy asserts that because it challenges the City's licensing scheme as lacking constitutionally required procedural safeguards, it has standing under the Supreme Court's "overbreadth" doctrine to challenge the licensing provisions of the City's ordinance as well as the license suspension and revocation provisions applicable to Convoy's situation. We agree that Convoy has standing to bring a facial challenge to the ordinance's revocation and suspension procedures, but hold that it cannot challenge the licensing provisions.

■■ In order to bring an action in federal court, a plaintiff must have suffered "an injury in fact; that is ... some threatened or actual injury resulting from the putatively illegal action...." *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (internal quotation marks omitted). To meet this requirement, "[a]bstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or

---

**2.** Nude dancing is a form of expression entitled to First Amendment protection and subject only to reasonable time, place, and manner restrictions. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion). Despite the numerous pages the City devotes to discussing the issue, Convoy does not dispute that the restrictions on nude dancing, such as the licensing of dancers or the six foot distance requirements, are reasonable time, place, and manner restrictions.

**3.** In addition to a facial challenge, a party may challenge a statute "as-applied." This type of challenge contends that the law is unconstitutional as applied to the plaintiff's particular expressive activity, even though the law may be capable of valid application to others. *Foti,* 146 F.3d at 635. Thus, a successful "as-applied" challenge does not invalidate the law itself, but only the particular application of that law. *Id.* However, in this case Convoy seeks to invalidate the licensing, revocation, and suspension provisions of the City's ordinance through a facial challenge.

threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal quotation marks omitted). Thus, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Munson,* 467 U.S. at 955, 104 S.Ct. 2839 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

■■ However, under the Supreme Court's "overbreadth" doctrine, a plaintiff may challenge an overly broad statute or regulation by showing that it may inhibit the First Amendment rights of individuals who are not before the court. *See, e.g., Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798–99, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Village of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). That is, the plaintiff can challenge a statute on the ground that it is unconstitutional as applied to someone else, even if his own conduct is not protected under the First Amendment. *See Foti,* 146 F.3d at 635 (citing *Vincent,* 466 U.S. at 797, 104 S.Ct. 2118).[4] The overbreadth doctrine is based on the observation that "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *see also Lind v. Grimmer,* 30 F.3d 1115, 1122 (9th Cir.1994) (overbreadth doctrine is designed to avert a potential chilling effect on speech). Thus, this doctrine "serves to overcome what would otherwise be a plaintiff's lack of standing." *Nunez v.*

*City of San Diego,* 114 F.3d 935, 949 (9th Cir.1997).

According to the Supreme Court, the crucial issues in determining overbreadth standing "are whether [the plaintiff] satisfies the requirement of 'injury-in-fact,' and whether it can be expected satisfactorily to frame the issues in the case." *Munson,* 467 U.S. at 958, 104 S.Ct. 2839. Thus,

> [the] slender [overbreadth] exception to the prudential limits on standing ... does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction. Rather, the exception only allows those who have suffered some cognizable injury, but whose conduct is not protected under the First Amendment, to assert the constitutional rights of others.

*Bordell v. General Elec. Co.,* 922 F.2d 1057, 1061 (2nd Cir.1991) (citations omitted); *see also Bigelow v. Virginia,* 421 U.S. 809, 816–17, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) (in order to have overbreadth standing, a plaintiff "must present more than allegations of a subjective chill. There must be a claim of specific present objective harm or a threat of specific future harm." (internal quotations omitted)); *Phelps v. Hamilton,* 122 F.3d 1309, 1326 (10th Cir.1997) ("[A] plaintiff bringing a facial challenge to a statute on First Amendment grounds must still satisfy the 'injury-in-fact' requirement in order to demonstrate standing.").

With regard to the licensing provisions, Convoy cannot satisfy the "injury-in-fact" requirement. It is undisputed that Convoy already has a license, which was issued by the City in 1987. Moreover, Convoy cannot assert that it will ever again be subject to the licensing provisions, because

---

4. Of course, a plaintiff whose conduct *is* protected may also bring a facial challenge to a statute that he contends is unconstitutional, without having to employ the overbreadth doctrine, by arguing that the statute could never be applied in a valid manner and would chill the speech of others. *See Foti,* 146 F.3d at 635; *Nunez v. City of San Diego,* 114 F.3d

935, 949 (9th Cir.1997); *Tucker v. State of California Dep't of Educ.,* 97 F.3d 1204, 1217 n. 10 (9th Cir.1996); *Lind v. Grimmer,* 30 F.3d 1115, 1122 (9th Cir.1994). As we conclude below, this scenario describes Convoy's challenge to the City's license suspension and revocation procedures.

it has never indicated that it intends to pursue another license. Thus, Convoy fails to demonstrate an "injury-in-fact" related to the licensing provisions of the City's ordinance, and therefore has no standing to challenge those provisions. However, there is no question that Convoy can satisfy the "injury-in-fact" requirement with regard to the revocation and suspension procedures employed by the City in suspending Convoy's license. *See Desert Outdoor Advertising, Inc. v. City of Moreno Valley,* 103 F.3d 814, 818 (9th Cir.1996) ("[A]ppellants suffered an injury in fact because the City actually brought an enforcement action against [them]."). Convoy therefore has standing to maintain a facial challenge to the lack of procedural safeguards associated with those procedures. *See Baby Tam,* 154 F.3d at 1100.

### 2. Adequacy of Procedural Safeguards Associated with the License Revocation and Suspension Provisions of the City's Ordinance

■ We review de novo an order granting summary judgment on the constitutionality of a statute or ordinance. *Roulette v. City of Seattle,* 97 F.3d 300, 302 (9th Cir.1996); *Valley Bank of Nev. v. Plus Sys., Inc.,* 914 F.2d 1186, 1189 (9th Cir.1990). Because we have concluded that Convoy has standing to challenge only the license revocation and suspension provisions of the City's ordinance, our determination of whether the City's ordinance includes adequate procedural safeguards is confined to those procedures.

We begin our analysis with the Supreme Court's decision in *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion). In a fragmented opinion, six justices agreed that a licensing scheme regulating adult entertainment must contain, at a minimum, two procedural safeguards.[5] First, "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained." *Id.* at 228, 110 S.Ct. 596. Second, "there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *Id.*

Convoy contends that the City's ordinance is unconstitutional because it fails to provide either of the procedural safeguards mandated by *FW/PBS.* The relevant provisions of the ordinance may be summarized as follows: An administrative appeal must be filed within ten days of a suspension or revocation of a license, and a hearing must be set no more than thirty days from the time it is requested. SDMC § 33.0501. A party then has ten days after receipt of the hearing officer's decision to file an appeal with the Committee. SDMC § 33.0502. The ordinance provides for an automatic stay of the suspension or revocation of a license during the time that an appeal to the hearing officer is pending or until the time for filing an appeal has expired, as well as during the time that an appeal of the hearing officer's decision to the Committee is pending or until the time for filing an appeal has expired. SDMC § 33.0501.[6] Upon receipt of the appeal, it is put on the Committee's agenda "for the limited purpose of determining whether the Committee will hear the appeal." SDMC § 33.0502. The Committee will only accept an appeal if certain enumerated criteria are met and three members of the

---

5. Justice O'Connor's opinion, joined by Justice Stevens and Justice Kennedy, held that the two safeguards were essential. Justice Brennan, concurring in the judgment and joined by Justice Marshall and Justice Blackmun, agreed with requiring these two safeguards, but also would have required a third safeguard-that the licensor bear the burden of going to court and justifying a license denial. *FW/PBS,* 493 U.S. at 238–42, 110 S.Ct. 596 (Brennan, J., concurring in the judgment).

6. These stays are subject to certain emergency provisions, which allow the Chief of Police to take immediate action if it is necessary to protect the public from injury or harm, or where a license was issued based on material misrepresentations in the application and but for those misrepresentations the license would not have been issued. SDMC § 33.0401.

Committee vote in favor of hearing the appeal. *Id.* If the Committee decides to hear the appeal, "the Consultant to the Committee ... shall set the appeal for hearing before the Committee...." *Id.* "The decision of the Committee to grant or deny the appeal shall be the final administrative remedy unless a hearing is set before the City Council pursuant to Section 22.0101, Rule 4." *Id.*

Judicial review is governed by Cal.Code Civ. P. §§ 1094.5, 1094.6. Once administrative remedies have been exhausted, a party whose license has been suspended or revoked may seek judicial review by filing a petition for writ of administrative mandamus within ninety days of the administrative decision becoming final. Cal.Code Civ. P. § 1094.6(b). The record of administrative proceedings must be prepared by the local agency within 190 days after a request is filed, Cal.Code Civ. P. § 1094.6(c), but there are no express time limits within which the court must take action on the writ petition. The City's ordinance does not provide for a stay during this process. However, the California statutory scheme provides that the administrative decision may be stayed by the court if the court is satisfied that it would not be contrary to the public interest. Cal.Code Civ. P. § 1094.5(g). The licensee may appeal the decision made by the reviewing court, and the appeals court may again stay the administrative decision. *Id.*

Significantly, *FW/PBS* dealt only with whether the procedural requirements were met with respect to the *denial* of a license. Therefore, it is unclear how the procedural safeguards mandated by *FW/PBS* for a license issuance process should be applied in the license suspension/revocation context. We address the application of each of these safeguards in turn.

### A. *Time Limits and the Status Quo*

 With regard to *FW/PBS 's* reasonable time limit requirement, we conclude that the key to the inquiry in the license suspension/revocation context is the preservation of the status quo during the administrative appeals process. The basis for the procedural safeguards set forth in *FW/PBS* is the danger of "undue delay" which "compel[s] the speaker's silence," and "results in the unconstitutional suppression of protected speech" as well as "the principle that the freedoms of expression must be ringed about with adequate bulwarks." 493 U.S. at 226, 228, 230, 110 S.Ct. 596 (internal quotation marks omitted). Of course, these considerations apply to license suspensions and revocations as well as license denials. However, this case differs from a license denial because here preservation of the status quo means that the suspension or revocation cannot be enforced, and the business is allowed to continue to operate under its license. Thus, there is no reason to require an administrative decision on a license suspension or revocation within "a specified and reasonable time period" so long as the status quo is maintained, because under those circumstances the administrative appeals process can continue indefinitely without the risk of the suppression of protected speech.

As described above, the City's ordinance fails to impose specified and reasonable time limits. For example, there is no limit on the time that the hearing officer may take to issue a decision, no time limit on the Committee's decision as to whether or not to hear the appeal, and no time limit on the Committee's decision on the merits if it decides to hear the appeal. However, the ordinance does provide for an automatic stay of the enforcement of a license suspension or revocation throughout the administrative appeal process. Therefore, regardless of how long this process takes, there is no risk of the suppression of protected activity. Because the City's ordinance preserves the status quo during this process, we conclude that it satisfies the first *FW/PBS* procedural safeguard with respect to license suspensions and revocations.

### B. *Prompt Judicial Review*

 There is some confusion associated with the meaning of the second *FW/PBS* safeguard, prompt judicial review,

and this confusion has resulted in a split in the circuits. One view is that prompt *access* to the courts will satisfy this requirement, even if there is not a time limit for a hearing or decision on the merits. *See TK's Video, Inc. v. Denton County, Tex.,* 24 F.3d 705, 709 (5th Cir.1994); *Graff v. City of Chicago,* 9 F.3d 1309, 1324–25 (7th Cir.1993) (en banc); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.,* 984 F.2d 1319, 1327 (1st Cir.1993). After noting that the Ninth Circuit had not addressed the issue, the district court adopted this approach and concluded that this safeguard was satisfied because a licensee could file for a writ of mandamus after the administrative appeal became final, and the state court had discretion to issue a stay of the license suspension pending a judgment in the case. However, after the district court issued its grant of summary judgment, this circuit adopted a second interpretation, which is that *FW/PBS* requires the "opportunity for a prompt hearing and a prompt decision by a judicial officer." *Baby Tam,* 154 F.3d at 1101.[7] Thus, we proceed under *Baby Tam's* understanding of *FW/PBS's* judicial review requirement.

Again, the policy consideration underlying this safeguard is the need to guard against undue delay that could lead to the suppression of protected speech, and we must determine how to best further that policy in applying the judicial review safeguard to a license suspension or revocation. In pursuing this goal, we conclude that we must extend *Baby Tam's* requirement of an opportunity for a prompt hearing and decision by a judicial officer in license denial cases to license suspensions or revocations as well. However, in the license suspension and revocation context, this second safeguard may also be met by the preservation of the status quo even if

there is no provision for a prompt judicial hearing and decision. Cf. *11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.,* 58 F.3d 988, 1001 n. 18 (4th Cir.1995) (en banc) (noting that while the County has no control over the time limitations imposed by the Maryland Rules, it "could avoid the constitutional problem engendered by its present scheme by permitting adult bookstores to operate until a judicial determination is rendered affirming a denial of a special permit"). As with the first safeguard, there is no risk of the suppression of speech so long as the status quo of allowing the business to operate is preserved. One example of a method of preserving the status quo which would satisfy the second procedural safeguard in the license suspension/revocation context is a provision, suggested by Convoy, for an automatic stay pending a judicial decision, which could be conditioned upon a timely filing of an appeal or petition for writ of mandamus.

In applying these guidelines to the case before us, we observe that the City's ordinance and the California statutory scheme contain no express time limits or guarantee of a prompt hearing or decision, and are therefore similar to the Nevada statute found to be inadequate in *Baby Tam,* 154 F.3d at 1101–02. *See also 11126 Baltimore,* 58 F.3d at 1001 (4th Cir.1995) (even where Maryland statutes provided a timetable, typical delay in excess of three months does not ensure sufficiently prompt judicial review); *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 225 (6th Cir.1995) (potential delays of over five months are impermissible). Thus, like the ordinances at issue in *Baby Tam, 11126 Baltimore,* and *East Brooks Books,* the City's ordinance and the California statutory scheme fail to satisfy the requirement of prompt judicial review.

**7.** The *Baby Tam* court noted that other circuits had held that "prompt judicial review requires a prompt decision on the merits." *Baby Tam,* 154 F.3d at 1101 (citing *11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.,* 58 F.3d 988, (4th Cir.1995) (en banc); *East Brooks Books, Inc. v. City of*

*Memphis,* 48 F.3d 220, 225 (6th Cir.1995)). The Eleventh Circuit also found that access to judicial review will not satisfy the second *FW/PBS* safeguard, but did not expand on this conclusion. *See Redner v. Dean,* 29 F.3d 1495, 1501–02 (11th Cir.1994).

However, as set forth above, it is possible that the scheme could be saved by maintenance of the status quo pending the judicial decision. California's statutory framework provides that a court "may stay the operation of the administrative order or decision pending the judgment of the court" unless a stay would be contrary to the public interest. Cal.Code Civ. Pro. § 1094.5(g). Thus, there is no guarantee of a stay-if the court is satisfied that a stay would not be contrary to the public interest, it *may* grant the stay, but is not required to do so. This gives rise to the possibility of the suppression of protected expression before judicial review of the case on the merits, and is therefore contrary to the principles which underlie the procedural safeguards set forth in *FW/ PBS*. Thus, while the maintenance of the status quo in the license suspension and revocation context may save an ordinance which does not provide for a prompt judicial hearing or decision, we cannot conclude that a discretionary stay provides the requisite protection in such a case. *Cf. JJR Inc. v. City of Seattle*, 126 Wash.2d 1, 891 P.2d 720, 724 (1995) (en banc) (holding that, under Washington's constitution, a discretionary stay of license revocation or suspension pending judicial review does not satisfy the minimum constitutionally permissible safeguard). Accordingly, we must conclude that the City's scheme for suspending and revoking licenses fails to satisfy the judicial review safeguard and is therefore unconstitutional.

### 3. *Relief*

Because we hold that the City's scheme for suspending and revoking licenses fails to provide constitutionally required procedural safeguards, we GRANT Convoy's request for an injunction. The City will be enjoined from enforcing a license suspension or revocation for ninety days after an administrative appeal becomes final, the time allowed for filing a writ of administrative mandamus under the California statutory scheme. If judicial review is sought during that period, the City will be enjoined from enforcing a suspension or revocation until there is a decision by a judicial officer. *See Baby Tam*, 154 F.3d at 1102 (final judicial determination or decision means that a judicial officer should make the final decision denying a license rather than a state censor, and does not refer to a court's decision itself becoming final through various rehearing and appellate procedures). This injunction will remain in place so long as the City's ordinance and the California statutory scheme fail to provide for a prompt hearing and decision by a judicial officer, or for the maintenance of the status quo pending a judicial decision on the merits.

### CONCLUSION

We REVERSE the district court's grant of summary judgment in favor of the City, and REMAND to the district court with instructions to enter summary judgment in favor of Convoy and to issue a permanent injunction in accordance with the provisions set forth above.

REVERSED and REMANDED.